UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DION X. A.,<br><br>                     Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations<br><br>                     Defendant. | Case No. 2:18-cv-00892-JCC-TLF<br><br>REPORT AND RECOMMENDATION TO AFFIRM THE COMMISSIONER'S DECISION TO DENY DISABILITY BENEFITS<br><br>NOTING DATE: APRIL 24, 2019 |

Plaintiff brought this matter for judicial review of the Commissioner's denial of his application for supplement security income ("SSI") benefits. Plaintiff contends the ALJ erred by:

(1)     Inaccurately identifying the opinion of plaintiff's treating physician as coming from a non-treating source, and failing to give that opinion proper weight; and

(2)     Relying on events that happened before the March 11, 2014 alleged onset date as a basis for discrediting medical evidence and plaintiff's testimony.

 The Court should reject these arguments and hold that the Commissioner's decision was neither based on legal error nor unsupported by substantial evidence. For the reasons analyzed below, the undersigned recommends that the Court affirm the Commissioner's decision to deny benefits.

I.     FACTUAL AND PROCEDURAL HISTORY

On July 14, 2009, plaintiff filed an application for SSI benefits, alleging he became disabled beginning December 1, 2008. Dkt. 8, Administrative Record (AR) 137, 171. His

REPORT AND RECOMMENDATION - 1

1  application was denied on initial administrative review and on reconsideration. *Id.* at 137.

2  Plaintiff appeared and testified at a hearing before an Administrative Law Judge (ALJ) on

3  January 12, 2011. *Id*. An unfavorable decision was rendered by the ALJ on February 2, 2011.

4  The Appeals Council denied review on August 28, 2012, and plaintiff did not appeal.

5      On March 11, 2014, plaintiff filed a new application for SSI, alleging an onset date of

6  December 1, 2008. On November 28, 2016, plaintiff appeared and testified before ALJ Kimberly

7  Boyce, as did a vocational expert. Plaintiff's attorney moved for, and the ALJ granted, leave to

8  amend the alleged onset date of disability to March 11, 2014, which coincides with the date of

9  his current application for benefits. *Id*. at 16. At the hearing, plaintiff testified regarding pain in

10 his lower back, hip, and buttocks, as well as anxiety and depression. On April 4, 2017, the ALJ

11 decided plaintiff was not disabled. *Id*. at 15-28.

12     The Commissioner employs a five-step sequential disability evaluation process in

13 determining whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found

14 disabled or not disabled at any step thereof, the disability determination is made at that step, and

15 the sequential evaluation process ends. *Id.* Step one considers whether the claimant is engaged in

16 "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing

17 C.F.R. § 416.920(a)(4)). Step two considers "the severity of the claimant's impairments. *Id.* If

18 the claimant is found to have a severe impairment, step three considers "whether the claimant's

19 impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404,

20 subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending

21 the inquiry." *Id.* If not, the claimant's residual functional capacity ("RFC") is considered at step

22 four in determining whether the claimant can still do his or her past relevant work and, if

23 necessary, at step five "make an adjustment to other work." *Id.*

24

25

REPORT AND RECOMMENDATION - 2

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since plaintiff's March 11, 2014 application date. *Id.* at 18. At step two, the ALJ found plaintiff had the following severe impairments: degenerative disc disease, degenerative joint disease, loss of visual acuity, depressive disorder, anxiety disorder, and trauma and stressor related disorders/post-traumatic stress disorder. *Id*. At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 19.

The ALJ determined plaintiff had the RFC to perform light work, and that he can occasionally climb, stoop, kneel, crouch, and crawl. AR 21. The RFC included the ability to understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration, and in which the tasks to be performed are predetermined by the employer, and the ability to cope with occasional work setting change, and occasional interaction with supervisors. *Id*. While the RFC precluded work in a team effort and work that requires interaction with the public as an essential element of the job, it did not preclude working in proximity with-coworkers nor occasional, incidental contact with the public. *Id*. After determining plaintiff's RFC, the ALJ found at step four that he did not have any past relevant work, but that at step five he could perform other jobs existing in significant numbers in the national economy, and therefore found plaintiff was not disabled. *Id*. at 21-28.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making that decision the Commissioner's final decision; plaintiff appealed on June 18, 2018. Dkt. 1.

II.     DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148 (2019); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.*

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). A Social Security proceeding is not adversarial, and the ALJ has a duty to fully develop the record. *Sims v. Apfel,* 530 U.S. 103, 110-111 (2000). The Court must consider the entire record and may not affirm by simply locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Garrison v. Colvin,* 759 F.3d 995, 1009-1010 (9th Cir. 2014). The reviewing court reviews only those reasons provided by the ALJ and may not affirm on a ground upon which the ALJ did not rely. *Garrison,* at 1010.

A. The ALJ's Assessment of Evidence from Dr. Jennifer Abrams.

Plaintiff contends the ALJ erred by misidentifying Dr. Jennifer Abrams as a "non-treating medical professional" and consequently failing to properly weigh her opinion. *See* AR 26. Dr. Abrams was plaintiff's primary care physician and treated plaintiff on several occasions from May 21, 2015 through September 3, 2016. AR 1092, 1087, 1068, 1074, 1080, 1275, 1269, 1255.

REPORT AND RECOMMENDATION - 4

Her role consisted of providing support and integration of plaintiff's specialist services, which included regular visits with psychologists and counselors for mental health and regular visits to Swedish Sports and Spine for chronic hip and buttock pain. AR 1432.

In a February 14, 2017 disability questionnaire, Dr. Abrams opined that plaintiff's chronic pain in the left buttock, hip, and lower left back limits his ability "to sit or stand for any substantial amount of time, as well as bend over or lift things." AR 1429. She also opined that plaintiff is unable to lift 2 pounds, unable to stand or walk. AR 1432. She also opined that plaintiff has significant anxiety and paranoia due to previous trauma as well as PTSD and is "limited in his ability to interact [with] others he doesn't know, or act in a customer service manner." *Id*. According to Dr. Abrams, his mental impairments also limit his ability to concentrate. *Id*. In light of these mental and physical impairments, Dr. Abrams opined that plaintiff should limit himself to 1-10 hours of work activities each week. AR 1429.

Dr. Abram's opinion regarding plaintiff's impairments conflicts with state agency opinions which describe a more benign view of plaintiff's limitations. For example, Dr. Gordon Hale opined that plaintiff retains the maximum physical RFC to perform a range of light work. AR 25, AR 179. State agency doctors Bruce Eather, Ph.D. and Andrew Forsyth, Ph.D. opined that plaintiff has the mental RFC to perform unskilled, routine tasks with limited social contact/interaction. AR 25, AR 165-67, 176-78, 180-82.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief,

REPORT AND RECOMMENDATION - 5

conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ ultimately gave "[v]ery little weight" to Dr. Abram's February 14, 2017 opinion while assigning significant weight to the state agency opinions from Dr. Hale, Dr. Eather, and Dr. Forsyth. AR 26. When a treating physician's opinion is contradicted (as it is here by the state-agency opinions), the ALJ may reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

The ALJ reasoned that Dr. Abrams opinion "conflicts with the record throughout the period at issue which consistently shows normal functionality." AR 26. The ALJ also pointed out that although Dr. Abrams opines plaintiff has a good treatment plan, the difficulty involves plaintiff following through with treatment. *Id*. The ALJ further noted that plaintiff's mental status exams showing good functionality conflict with Dr. Abrams' opinion that plaintiff is mentally disabled because of post-traumatic stress disorder. AR 26. In addition, the ALJ noted that Dr. Abrams appeared to have relied more on what plaintiff told her than what the evidence shows, which is problematic because plaintiff's statements are not well supported by evidence in the record. AR 26.

Although the ALJ misidentified Dr. Abrams as a "non-treating medical professional", the ALJ ultimately gave a legally acceptable reason for ascribing very little weight to a treating physician's disability opinion, i.e., the opinion conflicts with consistent evidence of functionality throughout the record. *See* AR 26. The ALJ did not elucidate why it is apparent Dr. Abrams relied "more on what the plaintiff told her than what the evidence shows." AR 26. Dr. Abrams

noted in her disability opinion that her diagnoses are supported by "testing, lab reports, etc." AR 1429. She has also treated plaintiff on at least eight occasions, *See* AR 1092, 1087, 1068, 1074, 1080, 1275, 1269, 1255, and her treatment notes show that she has had access to some of plaintiff's diagnostic records. AR 1090.[1]

The ALJ correctly identified several examples of evidence that are inconsistent with Dr. Abrams' opinion concerning plaintiff's physical limitations. While Dr. Abrams opines that plaintiff is not capable of sitting or standing for any substantial amount of time, the ALJ noted that plaintiff has been encouraged by his doctors to get more, not less exercise. AR 24 (citing AR 1068-1072) (Dr. Abrams' July 29, 2015 treatment notes: "really does not exercise, other than walking to park w/his girls 3 times per week . . . encouraged pt to do some regular activity (even walking)"); AR 1074 (Dr. Abrams' October 9, 2015 treatment notes: "giving encouragement to exercise"); AR 1085 (Dr. Abrams' November 13, 2015 treatment notes: "Giving encouragement to exercise.")).

The ALJ noted an October 15, 2014 treatment report in which plaintiff stated he is happiest when riding his go-cart. AR 20 (citing AR 1042). Treatment notes from August 17, 2014 show that plaintiff sought treatment for an ankle injury he sustained when he flipped his go cart two weeks prior. AR 1050. The ALJ noted that in July of 2015, plaintiff sought treatment for a laceration on the bridge of his nose, which he sustained, according to treatment records, *while riding a jet ski the night before.*[2] AR 24; 532. There is a reasonable inference that if plaintiff's

---

[1] Although Dr. Abrams does note that some of plaintiff's diagnostic testing, including a 2014 MRI of the hip area, did not reveal an underlying injury, it would be speculative to conclude this is the basis upon which the ALJ found that Dr. Abrams over-relied on plaintiff's statements to her. *See* AR 1090.

[2] Plaintiff claims he made up the story about a jet ski to his treatment provider to sound more masculine, when in fact he injured his nose when he fell carrying laundry up the stairs. AR 49. The ALJ noted that regardless of causation, plaintiff was sufficiently active in July of 2015 to injure his nose doing some type of activity. This was included in the ALJ's list of inconsistencies reducing the persuasiveness of the allegations. AR 24.

REPORT AND RECOMMENDATION - 7

pain truly limits him from sitting or standing for any substantial period of time, his activities would be more limited.

The ALJ further noted the consistent documentation throughout the period at issue showing plaintiff is not in any acute distress and walks normally. AR 22. While isolated treatment reports show that plaintiff experienced extreme pain after straining his back in May of 2014 (AR 1028) and August of 2016 (AR 1255), he tends to show improvement after such episodes. *See e.g.,* AR 1255 ("went to ER at beginning of month but pain back to usual"). From late 2015 through late 2016 plaintiff received osteopathic manipulation treatment from Dr. Anthony West in a series of visits for lower back, hip and buttock pain. He typically presented with pain levels of four out of ten and following treatment often reported partial or full relief of his symptoms. *See e.g.,* AR 1345-1346 (Dr. West's treatment notes of June 14, 2016: "He had osteopathic manipulation today to 5 region. He tolerated it without complication. He reported about 80% resolution of his symptoms.").

The ALJ cited notes showing that even on August 5, 2016, when plaintiff presented with increased pain due to a recent back strain, he showed a normal, steady gait, full range of motion in the extremities, 5/5 bilateral extremity strength, and bilateral straight leg raise testing was negative. AR 22 (citing AR 1228). While these observations do not necessarily refute that plaintiff experienced disabling pain at times, they are supportive of the ALJ's conclusion plaintiff's impairments are more benign than alleged in Dr. Abram's opinion.

The ALJ gave reasons for disregarding a treating physician's opinion that were specific and legitimate. The ALJ cited several specific examples of plaintiff's normal functionality, including evidence of normal muscle strength and range of motion, relatively benign treatment reports, consistent reports that plaintiff walked with a steady gait and was not in any acute

distress, evidence that plaintiff could walk to the park with his daughters, and evidence showing plaintiff was capable of riding a go-cart and a jet ski. While plaintiff argues that the ALJ erred by relying solely on the findings of non-examining physicians, the evidence discussed above comes from a wide variety of acceptable sources, including treatment notes from plaintiff's treating physicians. *See* AR 22-24. In sum, the ALJ gave legally acceptable reasons supported by substantial evidence to reject Dr. Abrams' treating physician opinion; therefore, the ALJ's failure to correctly identify Dr. Abrams as a treating physician was harmless. *See De Guzman v. Astrue*, 343 F. App'x 201, 207 n.5 (9th Cir. 2009) (citing *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008)).

        B. The ALJ's Assessment of Events preceding the March 14, 2014 alleged Disability Onset Date.

Plaintiff contends the ALJ erred in determining his residual functional capacity by improperly considering events predating his amended alleged March 11, 2014 onset of disability. He argues it was improper for the ALJ to consider:

1) in December of 2013 plaintiff could walk a mile at a time and had sole custody of his infant daughters (Dkt. 10 at 4) (citing AR 20, 23); and

2) in April of 2013 plaintiff claimed he was too busy to take psychotropic medication because he was caring for his daughter. Dkt. 10 at 4 (citing AR 23). Evidence predating March 11, 2014 has little value, he argues, because his condition substantially worsened after that date.

While evidence consisting of data that existed before an alleged onset may be of limited probative value, *see Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008), it is not per se error to consider such evidence. 20 C.F.R. § 404.1520 ("We will consider all evidence in your case record when we make a determination or decision whether you are

disabled."); *Yanes v. Berryhill*, 2017 WL 4181086, at *3 (E.D. Cal. Sept. 20, 2017) (finding it was not error to consider evidence of plaintiff's daily activities prior to the amended alleged onset). This is especially true considering that plaintiff has not identified any evidence of a discrete event that significantly worsened his condition around the time of the amended alleged onset. *See id*; *see* Dkt. 10.

### III.　CONCLUSION

For the above reasons, the ALJ properly determined plaintiff to be not disabled. The Court should therefore AFFIRM the Commissioner's decision to deny benefits.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **April 24, 2019**, as noted in the caption.

Dated this 10th day of April, 2019.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge